**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BIG BEAR VENTURES, LLC, *et al.*, | ) | CASE NO. 5:25-cv-00182 |
| | ) | |
| | ) | JUDGE DAVID A. RUIZ |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION & ORDER DISMISSAL** |
| PAX MEDICA, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiffs Big Bear Ventures, LLC and Vox Nova, LLC filed its original Complaint against Defendants Pax Medica, Inc. and Howard Weisman alleging the following causes of action: (1) fraud in the inducement; and (2) a civil RICO action. (R. 1). Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), (3), and (6). (R. 11). Soon thereafter, Defendants filed a Motion to Transfer Venue requesting this Court to transfer the action to the Southern District Court of New York pursuant to 28 U.S.C. § 1404(a). (R. 13).[1] Plaintiffs filed a brief opposing the motion to transfer (R. 15), after which Defendants filed a

[1] When the Court permitted Plaintiffs to amend the complaint, it denied Defendant's motion to dismiss without prejudice as moot, indicating the dismissal should not be construed as a determination on the merits. The Motion for Transfer, however, was not terminated, remained ripe for the Court's consideration, and was otherwise unaffected by the Amended Complaint.

reply in support of their motion. (R. 17). Thereafter, Plaintiff filed an Amended Complaint raising the same two causes of action. (R. 19). Defendants responded to the Amended Complaint by filing a renewed Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), (3), and (6). (R. 22).

## I. Factual Allegations of the Amended Complaint

Both Plaintiffs are owned by non-parties Jim and Michael Mindala. (R. 19, ¶¶12, 17, 34). According to the Amended Complaint, Defendant Pax Medica obtained the rights to produce a generic version of the medication drug named Suramin, which had previously been primarily employed to treat African Sleeping Sickness, but had also allegedly shown positive results to treat the symptoms of Autism Spectrum Disorder (ASD). *Id*. at ¶9. It is alleged that Weisman touted Pax Medica's future ability to produce the ASD medication over several months to the Mindalas, who had experience in the business of pharmaceutical distribution. (R. 19, ¶¶12-14). Without specifically identifying the content of said communications, Plaintiffs label the representations false or misleading. (R. 19, ¶14). The Mindalas also spoke to Michael Derby, who was one of Pax Medica's founders. *Id*. at ¶15.

After these discussions, the non-party Mindalas "created a new company, Vox Nova, LLC, which was intended to be the distribution company should an agreement be reached with Pax Medica." (R. 19, ¶17). "An exclusive distribution agreement (Specialty Benefit Manager Agreement) was then executed on June 30, 2023 between Vox Nova and Pax Medica, giving Vox Nova the exclusive right to act as Pax Medica's distributor for a period of 7 years. The terms of Vox Nova's agreement include a first payment of $500,000.00 *to be due following the medication's approval by the FDA*, with the rest of the $2,000,000 total split into four payments of $375,000.00 coming due every 90 days." (R. 19, ¶19) (emphasis added). Nevertheless,

"Mindala agreed to forward Pax Medica the first $500,000.00 payment due, at least in part, to Weisman's representation in an October 7, 2023 email that the 'availability of suramin for distribution is just a few months.'" (R. 19, ¶20). While Plaintiffs did not attach the Agreement to the Complaint, Defendants attached a copy to their Motion to Transfer. (R. 13-1, Exh. A). The agreement contains the following Forum Selection Clause related to forum selection and applicable law:

> 13.6 New York's laws shall govern all disputes, controversies, interpretive matters and litigation arising hereunder.
>
> 13.7 Parties hereby agree that the proper and exclusive venue for all disputes, controversies or litigation arising under this Agreement lies with the Courts of New York State.
>
> 13.8 The Parties (jointly and separately) agree to and hereby submit to the personal jurisdiction of the Courts of New York State, for all disputes, controversies and litigation arising under this Agreement.

(R. 13-1, PageID# 112).

Furthermore, it also contains an indemnification clause in section eight, which states that "PAX hereby indemnifies and agrees to hold Company [Vox Nova, LLC] harmless from, against and in respect of and shall on demand reimburse Company for: (a) any and all losses, liabilities, or damages suffered or incurred by Company: (i) by reason of any untrue representation…." (R. 13-1, PageID# 110).

The Agreement also contains what appears to be an Integration Clause, which states as follows:

> 13.1 This Agreement constitutes the entire agreement among the Parties regarding the subject matter hereof and all other prior or contemporaneous written or verbal negotiations, representations, arrangements and/or agreement regarding the subject matter hereof (including, but not limited to, any prior buy-sell or similar agreement pertaining to the sale of the Corporate Shares) are hereby superseded by this Agreement. The Parties acknowledge that there are no verbal

> or other written understandings, arrangements and/or agreements between the Parties relating to the subject matter of this Agreement.

(R. 13-1, PageID# 111).

In November of 2023, Jim Mindala agreed to buy $1,000,000.00 worth of stock in Pax Medica at $1.30 per share through another company he owned, Plaintiff Big Bear Ventures, LLC. (R. 19, PageID# 153). Months later, in March of 2024, the Mindalas learned that Weisman and others had been paid salaries and bonuses the Mindalas believed were extravagant. (R. 19, ¶¶26, 37).

## II. Motion to Transfer

Defendants Pax Medica and Weisman have asserted that this matter should be transferred to the United States District Court for the Southern District of New York pursuant to a valid and enforceable Forum Selection Clause (the "Clause"). (R. 13). Courts evaluate motions concerning forum-selection clauses in two broad steps. First, a court must determine whether a forum-selection clause is applicable to the claims at issue; second, if it applies, the court must conduct a forum-non-conveniens analysis and determine whether to dismiss or to transfer the case. *See Surfaces, Inc. v. Cambria Co., LLC*, 16 F.4th 209, 215 (6th Cir. 2021).

### A. Standard for Transfers

The Sixth Circuit Court of Appeals has observed that "six Circuits have held that the enforceability of a forum selection clause implicates federal procedure and should therefore be governed by federal law." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 827 (6th Cir. 2009) ("Given the possibility of diverging state and federal law on an issue of great economic consequence, the risk of inconsistent decisions in diversity cases, and the strong federal interest in procedural matters in federal court, we find persuasive the law used in the majority of circuits and now

adopt it.") Therefore, the Court rejects Plaintiffs' argument that this Court must apply New York law to determine whether the forum selection clause is enforceable. (R. 15, PageID# 120-21).

The Sixth Circuit Court of Appeals has set forth the following considerations when considering a motion to transfer based on a forum selection clause:

> A forum selection clause should be upheld absent a strong showing that it should be set aside. [*Carnival Cruise Lines, Inc. v.*] *Shute*, 499 U.S. [585] at 595, 111 S.Ct. 1522 [(1991)]. When evaluating the enforceability of a forum selection clause, this court looks to the following factors: (1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust. *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999). **The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced**. *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995).

*Wong*, 589 F.3d at 828 (emphasis added).

Where there exists a valid forum selection clause, "[a] plaintiff's choice of forum is accorded no weight because plaintiff is presumed to have expressed its desired forum in the forum selection clause." *Cliffs Nat. Res., Inc. v. Seneca Coal Res.*, LLC., No. 1:16CV3034, 2017 WL 1963445, at *3 (N.D. Ohio May 12, 2017) (*citing Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013)). "[T]he party acting in violation of the forum-selection clause … must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine Const. Co.*, 571 U.S. at 67.

Plaintiffs raise a myriad of arguments why the Clause should not be applied in this action. They assert the Court should not enforce the Clause because: (1) their claims do not arise out the Agreement and they have asserted a separate tort claim; (2) Defendant Weisman is not a

party to the Agreement; and, (3) Plaintiff Big Bear was not a party to the Agreement.[2] (R. 15).

**1. Defendants Have Standing to Enforce the Forum Selection Clause**

Plaintiffs have not challenged Defendant Pax Medica's standing to enforce the Clause, but have made a passing reference to Defendant Weisman not being a party to the agreement.

"[F]ederal courts routinely hold that where nonparties are closely related to a contractual relationship, a range of transaction participants—both parties and nonparties—should benefit from and be subject to forum selection clauses." *Lukasak v. Premier Sports Events, LLC*, 2020 WL 13578627, at *3 (W.D. Mich. Apr. 2, 2020) (collecting cases). In *Wilson v. 5 Choices, LLC*, 776 Fed. App'x 320 (6th Cir. 2019), a group of investors brought a civil RICO action accusing defendants of defrauding them in connection with real estate investments. In many respects, Plaintiffs bring similar claims herein, as they allege fraud in the inducement and civil RICO against all Defendants. (R. 19). The Sixth Circuit found that "Plaintiffs should not be allowed to escape the enforceable forum-selection clauses they had with the privity Defendants merely by instead suing those Defendants' non-privity affiliates to recover on the very contracts containing the forum-selection clauses." *Id*. at 329 (*citing Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 440 (7th Cir. 2012 ) (rejecting the argument that "a plaintiff can defeat a forum-selection clause by its choice … of defendants to name in the suit.")); *see also Clinton v. Janger*, 583 F. Supp. 284, 289–90 (N.D. Ill. 1984) (rejecting the argument that a non-party to a contract with a forum selection clause could not invoke that clause, and finding that "the cases hold that a range of transaction participants, parties and non-parties, should benefit from and be subject to forum

[2] Plaintiffs state that if the Court finds the Clause enforceable, the proper remedy would be a transfer to the Western District of New York and not the Southern District. (R. 15, PageID# 123-24).

selection clauses"); *accord Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir. 1988) ("the alleged conduct of the non-[privity Defendants] is so closely related to the contractual relationship[s] that the forum selection clause[s] appl[y] to all [D]efendants.")

With respect to Plaintiff's argument that Defendant Weisman has no standing to enforce the forum selection clause, the Court finds it irrelevant as Defendant Pax Medica may plainly do so. In any event, there is authority that a defendant closely related to the signatory of a forum selection clause, such as a CEO, has standing to invoke the clause. In *Holtzman v. Vill. Green Mgmt. Co. LLC*, 2020 WL 264331, at *6 (E.D. Mich. Jan. 17, 2020), another district court in this circuit concluded that a defendant, which was "a non-signatory to the Redemption Agreement," could invoke a forum selection clause in that agreement against a signatory plaintiff, because "it was reasonably foreseeable to both Plaintiffs that Defendant would seek to enforce the clause against them." While the Sixth Circuit has determined that a non-signatory to a contract may be bound by "a forum selection clause in that contract if the non-signatory is so sufficiently 'closely related' to the dispute that it is foreseeable that the party will be bound," some courts have acknowledged that the term "closely related" has not been well-defined. *See, e.g., Villanueva v. Barcroft*, 822 F. Supp. 2d 726, 737 (N.D. Ohio 2011).

Herein, Plaintiffs allege that Defendant Weisman is the CEO of Defendant Pax Medica. (R. 19, ¶12). However "closely related" is defined, this Court finds that an individual who signs an agreement with a corporation, such as Plaintiffs herein, should reasonably foresee, that the CEO of said corporation would be considered so "closely related" as to have standing to invoke a forum selection clause contained within the agreement. *See, e.g., Reagan v. Maquet Cardiovascular U.S. Sales, LLC*, 2015 WL 521049, at *3-4 (N.D. Ohio February 9, 2015) (finding upper-level management employees of defendant corporation sufficiently "closely

related" to an agreement containing a forum selection clause because such employees were directly involved in the agreement's execution and also the termination of plaintiff's employment). The Court finds both Defendants have standing to enforce the Clause.

**2. Lack of Fraud**

Plaintiffs generally aver that the Clause should not apply because their lawsuit contains a claim for fraud in the inducement, a tort. (R. 15). The thrust of the fraud in the inducement claim in the Amended Complaint is that Defendants made allegedly false representations about Pax Medica's ability to manufacture the ASD drug. (R. 19). The Amended Complaint states that "misrepresentations and nondisclosures were material to the Mindalas [non-parties]" and had they known that "there would be no product to distribute for years, if ever, Plaintiffs would not have entered into the … Agreement in June 2023, paid the initial $500,000.00 investment in October 2023, or invested an additional $1,000,000.00 in November 2023." (R. 19, ¶45).

First, whatever representations were made *prior* to the Agreement are subject to the Agreement's Integration Clause. Thus, it is plainly a matter of contractual construction as to whether such alleged misrepresentations or non-disclosures contradict the terms or representations within the agreement. The Agreement, in all capitalized font, specifically states that "THE PARTIES EXPRESSLY ACKNOWLEDGE AND AGREE THAT THE PROVISIONS OF THIS AGREEMENT ARE DEPENDENT ON THE PRODUCT BEING APPROVED FOR DISTRIBUTION IN THE UNITED STATES. THEREFORE, THE PARTIES ACKNOWLEDGE THAT THIS AGREEMENT IS NULL AND VOID IN THE EVENT THE PRODUCT IS NOT APPROVED." (R. 13-1, PageID# 111).

To the extent Plaintiffs rely on misrepresentations made after the Agreement was signed, the Agreement itself provides for a remedy in section eight: "PAX hereby indemnifies and agrees

to hold Company [Vox Nova, LLC] harmless from, against and in respect of and shall on demand reimburse Company for: (a) any and all losses, liabilities, or damages suffered or incurred by Company: (i) by reason of any untrue representation…." (R. 13-1, PageID# 110).

The Court finds that even Plaintiff's fraud in the inducement claim amounts to a dispute, controversy, or litigation that arguably arises under the Agreement, as it would require interpretation of said agreement to determine whether the fraud in the inducement claims are viable.

Finally, Plaintiffs have not identified any fraudulent behavior with respect to the inclusion of the forum selection clause itself into the Agreement. In order for a forum selection clause to be invalidated based on an allegation of fraud, "the party opposing the clause must show fraud in the inclusion of the clause itself." *Wong*, 589 F.3d at 828. The *Wong* court observed that the Sixth Circuit has "upheld a forum selection clause where the party opposing the clause failed to offer any evidence showing that it did not knowingly and willingly consent to the inclusion of the clause in the agreement." *Id*. (citing *Preferred Cap., Inc. v. Assocs. in Urology*, 453 F.3d 718, 722 (6th Cir. 2006) (finding enforcement of forum selection clause proper where opposing party "produced no evidence which would indicate that [it] was fraudulently induced to enter into the forum selection clause"). "General claims of fraud [ ] do not suffice to invalidate the forum selection clause." *Id*. (quoting *Assocs. of Urology*, 453 F.3d at 722).

Here, as in *Wong*, Plaintiffs argue "general fraud only, rather than fraud in the inclusion of the clause itself." *Id*. Plaintiffs make no allegation that Defendants made false representations concerning the chosen forum, nor do they contend that their agreement to the forum selection clause was obtained unknowingly or unwillingly. "Because Plaintiffs have made no arguments

suggesting that the forum-selection clauses (rather than the contracts in their entirety) were the product of fraud or other misconduct, the district court did not err in dismissing Plaintiffs' claims to allow the forum designated in the forum-selection clauses to address the validity and enforceability of the contracts." *Wilson v. 5 Choices, LLC*, 776 Fed. App'x 320, 327 (6th Cir. 2019) (agreeing with the district court that "[u]nless there is a showing that the alleged fraud or misrepresentation induced the party opposing a forum selection clause to agree to inclusion of that clause in a contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause.")

Based on the above, a district court in Michigan rejected a plaintiff's arguments against the enforcement of a forum selection clause and explained that "this is not a case where the party seeking to enforce the forum clause is alleged to have affirmatively misrepresented that disputes would be resolved in a different forum." *Versatrans, Inc. v. Hirsch Int'l Corp.*, No. 12-13913, 2013 WL 943519, at *7 (E.D. Mich. Mar. 11, 2013). Here too, Plaintiffs have not alleged that Defendants represented that another forum would apply to any disputes. Also as in *Versatrans, Inc.*, Plaintiffs herein are not claiming fraud in the inclusion of the forum selection clause itself, but rather that the whole agreement itself was procured by fraud.

As Plaintiffs have not asserted a well-pleaded claim that they were fraudulently induced to agree to the *forum selection clause itself*, their challenge to the Clause fails.[3]

**3. Applicability to Plaintiff Big Bear**

In a brief paragraph entitled "Other Factors Against Transfer," Plaintiffs raise the

[3] The Court agrees with *Liafail, Inc. v. Learning 2000, Inc.*, 2001 WL 1555308, at *3 (W.D. Ky. Aug. 29, 2001), which astutely observed that "[i]f a forum selection agreement could be avoided every time an issue going to the formation of the contract is raised, the efficiency and certainty of choice of law and forum achieved by forum selection clauses would be largely nullified."

perfunctory argument that Plaintiff Big Bear Ventures has not voluntarily submitted to jurisdiction of New York state courts, because it was not signatory to the Agreement. (R. 15, PageID# 123). Plaintiffs have not made anything resembling a legal argument, provide no meaningful legal analysis, and cite no legal authority to support their position. It is well established that "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *See, e.g., Kennedy v. Comm'r of Soc. Sec.*, 87 Fed. App'x 464, 2003 WL 23140056, at *1 (6th Cir. 2003) (*citing United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (rejecting perfunctory argument); *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997), *cert. denied*, 523 U.S. 1050 (1998) (same); *McClellan v. Astrue*, 804 F. Supp.2d 678, 688 (E.D. Tenn. 2011) (court under no obligation to scour record for errors not identified by claimant).

Furthermore, Plaintiffs, as well as their claims, are closely related. First, the fraudulent statements alleged in the Amended Complaint, upon which Plaintiff Vox Nova allegedly relied, overlap with those upon which Plaintiff Big Bear ventures allegedly relied, rendering these causes of action intertwined.[4] Second, the Amended Complaint itself represents that certain fraudulent statements were allegedly made to the Mindalas, who are non-parties, but who own, either individually or together, the two Plaintiffs. According to the Complaint itself, it appears that Plaintiff Vox Nova was not even formed until after the representations had been made to the Mindalas. From the face of the Amended Complaint, it is not clear when Plaintiff Big Bear Ventures was formed, nor is it clear whether Defendants' alleged misrepresentations to Jim Mindala were made with an intent to induce him to invest in Pax Medica using his Big Bear,

[4] Even reading the Amended Complaint as a whole, it is not entirely clear which statement(s) Plaintiff Big Bear Ventures relied upon causing it to purchase Pax Medica shares.

LLC. (*See generally* R. 19). Given the close relationship between the two Plaintiffs through their common ownership and their commercial relationship with Defendant Pax Medica, the Court finds no prejudice to the enforcement of the forum selection clause against both Plaintiffs. Furthermore, the Court finds that pursuing the Plaintiffs' intertwined claims in separate courts could result in inconsistent determinations and result in highly inefficient use of the parties' and the courts' respective resources.

**B. Proper Method for Enforcing the Forum Selection Clause.**

As the Court has found the Clause is both valid and enforceable, the question remains as to the proper remedy. Defendants have requested a transfer to the federal district court for the Southern District of New York. (R. 13), while Plaintiffs request a transfer to the federal district court for the Western District of New York if the Court finds the Clause enforceable. (R. 15).

"When the forum-selection clause designates a court 'within the federal court system,' the appropriate mechanism is 'a motion to transfer' pursuant to § 1404(a)." *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 310 (6th Cir. 2024) (*citing Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 567 (6th Cir. 2019)). Here, however, the Agreement does ***not*** designate another *federal* court as the proper venue, but rather asserts that "venue for all disputes, controversies or litigation arising under this Agreement lies with the Courts of New York ***State***." (R. 13-1, PageID# 112) (emphasis added). In this Court's view, the plainest reading of this language evokes an intent to have this matter litigated in the state courts of New York. Where a "forum-selection clause indicates that a matter should be heard by a state or foreign court, then *forum non conveniens* is the appropriate method of enforcement." *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 567 (6th Cir. 2019) (*citing Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W.*, 571 U.S. 49, 60-61 (2013)).

Here, the Court is confronted with a somewhat unusual scenario, as Defendants seek to *transfer* this case to the federal district court in the Southern District of New York pursuant to 28 U.S.C. § 1404(a)—a venue that the forum selection clause does not contemplate. However, when "a valid forum selection clause mandates venue in state court or a foreign jurisdiction, § 1404(a) does not apply." *Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 371 n.2 (6th Cir. 2008) (Moore, J., concurring) ("Of course, if transfer is not possible because a valid forum-selection clause mandates venue in state court or a foreign jurisdiction, § 1404(a) does not apply. *See* 14D CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3803.1 (2008)).

Nevertheless, a sister court in this Circuit has recently addressed precisely such a scenario. Therein, the defendant alternatively sought dismissal under Fed. R. Civ. P. 12(b)(3), which is simply inapplicable where there is a forum selection clause, or a transfer to the federal district court in Iowa despite the forum selection clause designating the Winnebago county, Iowa state court as the proper forum. *Lyon v. Winnebago Industries, Inc.*, 2025 WL 1588970 (S.D. Ohio, Jun. 5, 2025). The District Court found as follows:

> **D. The Forum Non Conveniens Analysis Requires Dismissal.**
>
> The Court starts with a procedural matter—[defendant's] failure to expressly invoke the doctrine [of forum non conveniens]. It turns out that does not matter. The forum non conveniens "doctrine falls within the court's inherent authority," so this Court may "raise the doctrine on its own accord." *Wong*, 589 F.3d at 830. Beyond that, "*[f]orum non conveniens* permits a court to decline to exercise jurisdiction even when jurisdiction is proper." *Boling*, 771 F. App'x at 567. But, in contrast to § 1404(a), under which federal courts may transfer cases, "the traditional remedy" under forum non conveniens is "outright dismissal." *Atl. Marine*, 571 U.S. at 60.
>
> As already described, valid forum-selection clauses alter the traditional forum-non-conveniens analysis. "Only under extraordinary circumstances unrelated to the convenience of the parties should" the Court decline to enforce the parties'

> valid forum-selection clause. *Id*. at 62. And under *Atlantic Marine*'s modified forum-non-conveniens analysis, the [plaintiffs] must show such extraordinary circumstances exist and "bear the burden of showing that public-interest factors overwhelmingly disfavor" dismissal. *Id*. at 67.
>
> The [plaintiffs] haven't even attempted to climb that steep hill. It's unlikely they could if they tried. This is not a "localized controvers[y]" so far as the Court can tell. *See Lakeside Surfaces*, 16 F.4th at 215 n.2. The [plaintiffs] bought their RV in Texas. (Doc. 2, #38). Additionally, while the RV currently sits in Newark, Ohio, awaiting repairs, the Lyons did not specify in their Complaint where any repairs were made. (*See id*. at #38–39). And as to the remaining public-interest factors that may apply, *see Lakeside Surfaces*, 16 F.4th at 215 n.2, the Court expects that they would be neutral at best. Simply put, the [plaintiffs] did not meet their burden of showing extraordinary circumstances that would allow the Court to ignore the valid forum-selection clause in the [Iowa state court] to which [plaintiffs] and [defendant] agreed.

*Lyon*, 2025 WL 1588970 at **5-6.

Herein, the result is no different. As stated by the Supreme Court, an enforceable forum-selection clause alters the standard forum-non-conveniens analysis in two critical aspects—first, "the plaintiff's choice of forum merits no weight," and second, "a district court may consider arguments about public-interest factors only," as a court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 63-64. These "public-interest factors include 'administrative difficulties flowing from court congestion; the local "interest in having localized controversies decided at home;" the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.'" *Lakeside Surfaces*, 16 F.4th at 215 n. 2 (*quoting Hefferan v. Ethicon Endo-Surgery Inc*., 828 F.3d 488, 500 (6th Cir. 2016)). "Because public-interest factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl.*

*Marine*, 571 U.S. at 51.

This is not an unusual case. It involves business transactions between Plaintiffs and Defendants that are governed, at least in part, by the Agreement, with the additional issue of whether Plaintiffs were fraudulently induced into entering the Agreement or into investing into Defendant Pax Medica. Nothing in the public policy factors suggests that the Clause should be ignored. If anything, the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action heavily favors New York state courts as the forum, as the Agreement states New York's laws shall govern all disputes, controversies, interpretive matters and litigation arising under the Agreement. As such, the Clause is enforceable. Because the Clause sets a state court as the appropriate venue, the Clause is appropriately enforced by dismissing this action without prejudice.

**III. Conclusion**

For the reasons discussed above, the Court GRANTS in part and DENIES in part Defendants' Motion to Transfer. (R. 13). The Court grants Defendants' request to find that the present dispute is governed by a valid and enforceable forum selection clause. However, the request for a transfer is denied. The Court hereby DISMISSES WITHOUT PREJUDICE this action against Defendants on forum-non-conveniens grounds. In addition, Defendants' renewed Motion to Dismiss (R. 22) is hereby DENIED as moot.

This decision is not upon the merits of Plaintiffs' Complaint and does not in any manner determine whether Plaintiffs have meritorious claims against Defendants. But pursuant to the Agreement, which sets the forum, Plaintiffs must pursue those claims in a state court of New York.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: September 29, 2026